267 N.J. Super. 167 (1993)
630 A.2d 1188
LORETTA STANLEY, AN INFANT BY HER GUARDIAN AD LITEM, HERBERT STANLEY, INDIVIDUALLY, PLAINTIFFS,
v.
STATE INDUSTRIES, INC., STATE OF NEW JERSEY, DIVISION OF YOUTH AND FAMILY SERVICES, DOLORES HILLS, JOHN DOE, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided April 30, 1993.
*168 Kenneth A. Berkowitz, attorney for plaintiffs (Blume, Vazquez, Goldfaden, Berkowitz & Donnelly, P.C., attorneys).
Paul R. Kenny, Deputy Attorney General, for defendant State of New Jersey, Division of Youth and Family Services (Robert J. Del Tufo, Attorney General, attorney).
Gary Koenigsberg, for defendant Leroy Winbash (Zucker, Facher and Zucker, attorneys).
Elizabeth A. Brewster, for defendants State Industries and Essex Plumbing Inc. (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys).
FUENTES, J.S.C.
Plaintiff Loretta Stanley, an infant, was severely scalded while bathing on January 17, 1989. She filed this personal injury action against her foster mother, Dolores Hills, alleging negligence, and against the Division of Youth and Family Services (DYFS), under a theory of vicarious liability. DYFS filed a motion for summary judgment seeking dismissal of the complaint. It is my conclusion that the Division of Youth and Family Services cannot be held *169 vicariously liable for the negligent acts or omissions of a foster parent.
The facts are summarized as follows. In July of 1986, Loretta Stanley was voluntarily placed in DYFS foster care by her natural mother. DYFS, in turn, placed Loretta with Dolores Hills in April 1988. Hills was accepted as a foster parent after an application assessment, background check and pre-service training. Hills received maintenance reimbursement for Loretta's food and clothing, but no compensation for her service as a foster parent.
The accident occurred when Hills's granddaughter, Jenel Sconiers, six years old, ran water in the bathtub at Hills's request. Hills then went out of the house to observe a fire across the street. Jenel ran only the hot water and told Loretta to get in the tub. When she did, Loretta suffered extensive burns on her legs and buttocks. The injuries have required substantial medical attention and expenses.
A number of jurisdictions have held that the state or its subdivisions may be liable for injuries suffered by children in foster care for negligent placement or supervision. Hanson v. Rowe, 18 Ariz. App. 131, 500 P.2d 916, 918 (1972) (state may be liable for assault and wrongful death if state had knowledge of foster father's proclivity for violence); Elton v. County of Orange, 3 Cal. App.3d 1053, 84 Cal. Rptr. 27 (1970) (agency may be liable for negligent placement after child assaulted by foster parent); Vonner v. State, 273 So.2d 252 (La. 1973) (death resulted from beatings over extended period of time); Bartels v. County of Westchester, 76 App.Div. at 517, 429 N.Y.S.2d 906 (1980) (where child scalded by bathing, county liable for negligence since it had actual notice of prior mistreatment and its duty of care was nondelegable); Little v. Utah State Div. of Family Services, 667 P.2d 49 (Utah 1983) (agency liable for negligent failure to adequately train foster parents in care of autistic child); Babcock v. State, 116 Wash.2d 596, 809 P.2d 143 (1991) (state liable for negligent supervision in foster parent sexual assault). But see *170 Thornton v. Commonwealth, 28 Mass. App. Ct. 511, 552 N.E.2d 601 (1990) (duty of care to child held to be delegable).
Courts in other jurisdictions have declined to hold state or county child placement agencies liable. Koepf v. County of York, 198 Neb. 67, 251 N.W.2d 866 (1977) (claim of negligent selection and supervision of foster parents rejected in beating death by foster mother); Seavy v. State, 21 App.Div.2d 445, 250 N.Y.S.2d 877 (1964), aff'd 17 N.Y.2d 675, 269 N.Y.S.2d 455, 216 N.E.2d 613 (1966) (state not liable for negligent placement where mentally retarded youth set fire to a barn); Pickett v. Washington County, 31 Or. App. 1263, 572 P.2d 1070 (1977) (in horseback riding accident, state immune from liability since shelter care parents were immune from discretionary acts); Simmons v. Robinson, 305 S.C. 428, 409 S.E.2d 381 (1991) (agency not liable for foster parent's negligent operation of automobile).
In general, courts appear inclined to hold state or county placement agencies liable for a foster child's injuries where the agency has negligently placed or supervised a child with assaultive or abusive foster parents. However, courts appear reluctant to hold agencies liable where the child's injuries result from the foster parent's ordinary negligence. In this case, plaintiff urges that DYFS is vicariously liable for Dolores Hills's negligent conduct because the Division's duty of care to foster children cannot be delegated. Plaintiff relies on Bartels v. County of Westchester, supra, 429 N.Y.S.2d at 906, and Vonner v. State Through Department of Public Welfare, supra, 273 So.2d at 252, for the proposition that a child placement agency's duty of care to the child is nondelegable.
However, the Bartels and Vonner cases are distinguishable from the present case in that they involved allegations of physical abuse against the foster parents rather than acts of mere negligence. In both cases, the child placement agency was held liable because its duty of care to the child was nondelegable. With one possible exception, no case has been found holding a state or county child placement agency vicariously liable for a foster parent's ordinary negligence resulting in personal injury to the *171 foster child. See Simmons v. Robinson, 303 S.C. 201, 399 S.E.2d 605 (Ct.App. 1990), rev'd, 305 S.C. 428, 409 S.E.2d 381 (1991).
Several out of state cases have addressed issues somewhat similar to those presented here and have declined to hold the agencies liable. In Thornton v. Commonwealth, supra, the state child placement agency placed the foster child in a summer youth program. 552 N.E.2d at 601. Thereafter, the child drowned in a canoe accident and his mother brought an action against the State for negligence. The court rejected the notion that the agency was vicariously liable for the program's alleged negligence since the program was conducted by an independent contractor to whom the State had delegated its duty of care.
In Simmons v. Robinson, supra, 409 S.E.2d at 381, a foster child was injured in an automobile accident and charged the foster mother with negligence. A South Carolina appeals court determined that the duties of the Department of Social Services were "nondelegable" and thus imposed vicarious liability upon the agency for the alleged negligence of the foster mother. In reversing the appellate court's judgment, the South Carolina Supreme Court held that the foster mother was not an employee of the State merely because she was a foster parent. The Court found that the foster mother was a licensee and not an employee or independent contractor, and therefore, her negligent conduct could not be imputed to the State. In Kern v. Steele County, 322 N.W.2d 187 (Minn. 1982), where a foster child consumed varnish remover, the court held that her foster parents were not employees of the county, obligating the county's insurer to defend and indemnify the foster parents.
As in the Simmons and Kern cases, supra, one New Jersey case has determined that foster parents are not employees of the State. New Jersey Property Liab. Ins. Guar. v. State, 195 N.J. Super. 4, 477 A.2d 826 (App.Div. 1984). In New Jersey Property, a foster child's natural parents brought an action against DYFS and its approved foster parents for personal injuries suffered by their child while in foster placement. The foster parents *172 filed a separate declaratory relief action to obligate the State to assume their defense. The action was based on N.J.S.A. 59:10A-1, which requires the Attorney General to defend any state employee sued for an act or omission occurring in the course of employment. After reviewing statutes governing child placement and the appropriate provisions of the New Jersey Tort Claims Act, the court found that the circumstances involving DYFS child placement "do not denote a degree of control by DYFS over foster parents sufficient to confer employee status...." Id. at 13, 477 A.2d 826. Since foster parents were not state employees, the State was not required to defend and indemnify them against personal injury claims. Although the court did not decide the question of whether DYFS may be vicariously liable for a foster parent's negligence, a reasonable application of the principles set forth in New Jersey Property, supra, supports such a conclusion here.
Plaintiff seeks to distinguish New Jersey Property, arguing that it decided only the narrow issue of whether foster parents are state employees for purposes of requiring the State to defend and indemnify foster parents for negligent claims. It is also contended that the State can be vicariously liable since its duty of care was nondelegable. However, I perceive no logical reason to distinguish New Jersey Property's holding that foster parents are not state employees under the Tort Claims Act from the present case which concerns whether foster parents are state employees for purposes of vicarious liability. In both instances, the determination rests on the level of control exercised by the State over foster parents and that level of control has been determined to be negligible. Id. at 14, 477 A.2d 826.
Control is the essence of the employer-employee, masterservant and principal-agent relationship. In re Baby M, 217 N.J. Super. 313, 382, 525 A.2d 1128 (Ch.Div. 1987), aff'd in part, rev'd in part, 109 N.J. 396, 537 A.2d 1227 (1988), on remand, 225 N.J. Super. 267, 542 A.2d 52 (1988); Arcell v. Ashland Chemical Co., Inc., 152 N.J. Super. 471, 378 A.2d 53 (Law Div. 1977); Erickson *173 v. Schwiers Co., 108 N.J.L. 481, 483, 158 A. 482 (E & A 1931). The negligible amount of control that DYFS exercises over the way foster parents "structure and carry out the work of caring for the foster child" convinces me that the Division of Youth and Family Services is not vicariously liable under any theory of respondent superior for the negligent acts of a foster parent. New Jersey Property, supra, 195 N.J. Super. at 14, 477 A.2d 826.
Finally, any determination that DYFS is liable for a foster parent's negligence would seriously affect the State's foster parent program as it now operates and would greatly hinder future placement efforts. Such a result is not in the public interest and certainly not in the interest of children who need homes. To impose vicarious liability upon DYFS for every alleged tort of foster parents would make the agency a virtual guarantor for every child in foster placement. As the Appellate Division noted while evaluating a request to confer employee status on foster parents:
To adopt such a theory would place an intolerable burden upon the State and might well diminish the beneficial effects of the foster parent program and compel a return to institutional care as the sole means of addressing the plight of abused and neglected children.
[New Jersey Property, supra, 195 N.J. Super. at 16, 477 A.2d 826.]
Based on my conclusion that a foster parent is neither an agent, servant or employee of DYFS, I find it unnecessary to address plaintiff's claim that DYFS is vicariously liable because its duty of care is nondelegable. A foster parent's negligent conduct cannot be imputed to DYFS under any theory of vicarious liability.
Accordingly, I find that the Division of Youth and Family Services is not vicariously liable for the torts of a foster parent. Since no issues of a material fact remain as to the Division's liability, its motion for summary judgment is granted.