935 F.2d 660
 19 Fed.R.Serv.3d 1177
 Katherine MILTIER, Administratrix of the Estate of Gwendolyn
Miltier, Plaintiff-Appellant,
v.
Ann F. DOWNES; Shirley Burton, Defendants-Appellees,
and
Charles F. Beorn, MD; Leon Dixon, MD; Robert W. Fry, MD;
Reva H. Barker, HnT; Mary Spencer, RN; Kay Upton, RN; Ray
Kessler; Edward W. Murray; Allyn R. Seilaff; John Doe,
Warden and other Unknown Named Wardens of Virginia
Correctional Center for Women, Individually and Officially,
Defendants. (Two Cases)
 Nos. 90-1119, 90-1137.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 9, 1991.
Decided June 11, 1991.
 
 Christopher Vincent Tisi, argued, Ashcraft & Gerel, Washington, D.C. (Susan Minkin, Patrick S. Guilfoyle, Ashcraft & Gerel, Washington, D.C., on the brief) for plaintiff-appellant.
 Paul A. Simpson, argued, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va. (Michael P. Falzone, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., on the brief), for defendants-appellees.
 Before HALL and PHILLIPS, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PHILLIPS, Circuit Judge:
 
 
 1
 Counsel for the claimant in this case were sanctioned under Rule 11, Fed.R.Civ.P., on the grounds that they opposed a summary judgment motion as to defendants, Wardens Ann Downes and Shirley Burton (the wardens), despite having no sound basis in fact or law for their claim against these defendants. Counsel took this appeal from the district court's order imposing a monetary sanction. Because we are not satisfied that the district court made an independent inquiry into counsel's position viewed at the time of the summary judgment motion, or considered the proper factors in awarding a monetary sanction, we vacate and remand for reconsideration in light of our opinion.
 
 
 2
 * Plaintiff brought a 42 U.S.C. Sec. 1983 claim against the wardens and members of the medical staff of a Virginia prison for violation of her daughter's eighth amendment rights to adequate medical care, following her daughter's death while an inmate at the prison. After discovery had proceeded, the wardens requested plaintiff's counsel to voluntarily dismiss the claim against them because, it was contended, evidence uncovered during discovery failed to support a Sec. 1983 claim against them. Plaintiff's counsel considered the request but refused. At the conclusion of discovery, however, counsel did voluntarily dismiss a prison administrator.
 
 
 3
 The wardens, along with the other defendants, then moved for summary judgment, and the wardens also moved for Rule 11 sanctions for failure to dismiss voluntarily. The district court granted summary judgment to all defendants and then stated that it "need not consider" any other pending motions, including the wardens' Rule 11 motion. Plaintiff appealed, and the wardens cross-appealed denial of the Rule 11 motion.
 
 
 4
 This court reversed the grant of summary judgment as to some of the defendants, affirmed the grant of summary judgment to the wardens, and remanded for further proceedings on the Rule 11 sanctions. See Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). In remanding, the court said:
 
 
 5
 We therefore cannot say that the circumstances and the record clearly reflect the reasons for the district court's denial of [defendants'] Rule 11 motion. Accordingly, we remand for consideration (or reconsideration) [of] the motions of Downes and Burton for Rule 11 sanctions. In doing so we express no opinion on the merits of the motion. The reasons for the district court's action on the motion should be at least briefly set forth.
 
 
 6
 896 F.2d at 855.
 
 
 7
 Upon remand, the district court "consider[ed] the wardens' motion for Rule 11 sanctions"--presumably for the first time. The court found a Rule 11 violation when plaintiff's counsel filed papers opposing the summary judgment motion. The court reasoned as follows:
 
 
 8
 During discovery, plaintiff's counsel acquired information which clearly revealed that no basis existed for the claims against Downes and Burton. As the Fourth Circuit noted, there was "simply no evidence to support a finding that the wardens tacitly authorized their subordinate health care providers to employ grossly incompetent medical procedure." Miltier, 896 F.2d at 855. Despite this total lack of evidence, counsel refused the defendants' request that they be dismissed from this action.
 
 
 9
 J.A. at 157. On that basis the court imposed a monetary sanction on counsel.
 
 
 10
 In setting the amount of the sanction, the court stated:
 
 
 11
 Defendants have submitted documentation to support their claim of $8,734.00 in attorney's fees [footnote omitted] and $563.89 in expenses. The Court adopts these figures [as the sanction to be imposed].
 
 
 12
 Id. The footnote in the district court's opinion included a list of the hours expended and the hourly rate for defendant's counsel which support the $8,734.00 figure.
 
 
 13
 Plaintiff's counsel took this appeal challenging the district court's decision to impose sanctions and the amount of the sanction imposed.[1] We consider their challenges in turn.
 
 II
 
 14
 * A district court's ultimate decision to impose Rule 11 sanctions, and the quality and amount of the sanctions imposed, is reviewed under an abuse of discretion standard. Cooter & Gell v. Hartmarx Corp., --- U.S. ----, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). In conducting such a review we look to the findings of fact of the district court as to whether a reasonable attorney in like circumstances could believe her challenged conduct to be, as certified, well-grounded in fact and law. See Straitwell v. National Steel Corp., 869 F.2d 248, 253 (4th Cir.1989).
 
 
 15
 As we noted in our remand, "[w]hen the motion for sanctions is foolish, or when the reasons for denying a colorable motion are apparent from the record, the judge 'need not belabor the obvious.' " Miltier v. Beorn, 896 F.2d at 855 (quoting Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1084 (7th Cir.1987)). But as we made plain, the circumstances and the record here do not point to "the obvious," but instead require close review and fair assessment of counsel's actions. After reviewing the opinion of the court we are not satisfied that the court took a fresh look at the question of whether counsel's position, viewed at the time the motion was made, was reasonably justified. As the Advisory Committee on Rules made clear, "the court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed.R.Civ.P. 11 advisory committee's note. Merely noting that counsel's position was rejected on summary judgment cannot serve as a substitute for the "reasonably justified" analysis demanded by Rule 11. See, e.g., Hoover Universal, Inc. v. Brockway Imco, Inc., 809 F.2d 1039, 1044 (4th Cir.1987) (court affirmed summary judgment for defendant but denied Rule 11 sanctions against plaintiff, since "[o]bjectively [plaintiff had] a glimmer of a chance of prevailing.").
 
 
 16
 The facts and law that plaintiff's counsel contend they relied on in deciding not to voluntarily dismiss the wardens is the following: 1) evidence that the wardens were made aware of the prisoner's deteriorating medical condition; 2) expert testimony that the wardens' actions constitute a gross violation of correctional standards; and 3) Cooper v. Dyke, 814 F.2d 941 (4th Cir.1987), and Miranda v. Munoz, 770 F.2d 255 (1st Cir.1985), which counsel read to mean that reliance on medical judgments was not necessarily enough to escape Sec. 1983 liability. Plaintiff's counsel contends that any reasonable lawyer holding these cards in their hand would not have folded.
 
 
 17
 The district court's opinion makes no independent findings of fact on whether these facts and law gave counsel a sound basis for their decision to resist the wardens' motion; instead, the court principally relied on our statement in Miltier v. Beorn that there was "simply no evidence" to support the wardens' liability. The danger here is that the summary judgment analysis becomes the Rule 11 analysis. Because the court made no findings it is not at all clear that the court below made the proper inquiry as to reasonableness, one which must be made independently and from an ex ante perspective. In undertaking the required analysis, it must be remembered that counsel do not have to be right on their legal position to avoid sanctions, only reasonable. Operating Engineers Pension Trust Co. v. A-C Co., 859 F.2d 1336, 1344 (9th Cir.1988). Put another way, the question is not whether the expert's testimony and the reliance on Cooper v. Dyke created a triable issue, but whether counsel were objectively reasonable in relying on these facts and law in opposing defendants' summary judgment motion.
 
 B
 
 18
 Of course, counsel can escape Rule 11 sanctions if they were seeking in good faith to expand, alter, or change existing law. Fed.R.Civ.P. 11. Defendants posit that plaintiff's counsel did not purport to ask the court to expand or overturn existing law; instead, counsel presented their claim as falling within extant precedent of this court on Sec. 1983 liability. Defendants contend that plaintiff's counsel only late in the game turned to a good faith argument for extension as a basis for avoiding sanctions. Defendants argue from Cabell v. Petty, 810 F.2d 463, 466 (4th Cir.1987), that because counsel did not flag this issue up front as an argument for good faith extension, then they are precluded from raising that argument to oppose sanctions.
 
 
 19
 We think that misreads Cabell. The Cabell court said, "On the available record, we can see absolutely no objective indication that plaintiff's counsel ever intended to seek a modification of the law." 810 F.2d at 466. The court added, "The weight of existing law overwhelmingly favored the defendants, while the record appears devoid of any factual or legal investigation conducted by plaintiffs' counsel as an effort to formulate an alternative argument in favor of his clients." Id. What this most critically shows is that the Cabell court looked at the entire record before deciding that counsel could not be thought to have been making a good faith argument for the extension or modification of existing law. Obviously the court did not decide this simply because counsel nowhere expressly asserted that this was his purpose. The Cabell court was concerned only to find some "objective indication" that counsel was making in good faith such an argument. Such indicators can be found short of express assertions couched in terms of extension or modification.
 
 
 20
 In this case, for instance, the papers submitted to the court reflect an express reliance on Cooper v. Dyke, an opinion of this court, and the First Circuit opinion in Miranda v. Munoz, two cases which arguably gave facial support to their theory of supervisory liability. Counsel relied on these cases to argue that their theory of supervisory liability fell within the ambit of this court's holdings on Sec. 1983.
 
 
 21
 In hindsight, it may appear that counsel's theory could only be accepted if this court extended then extant law. This is for the district court to decide, as a prelude to deciding whether, if extension of extant law were required to rule in their favor, counsel had a good faith basis for arguing that it was warranted. That preliminary question can itself be a difficult one. As the Ninth Circuit recognized in Golden Eagle Distributing Corp. v. Burroughs Corp., 801 F.2d 1531, 1540 (9th Cir.1986), it is sometimes hard to distinguish between what is "warranted by existing law" and what requires an "extension of existing law." These, in any event, are the questions about counsel's conduct in pressing on with their claim against the wardens that should be directly addressed by the district court on remand.
 
 III
 
 22
 The monetary sanction imposed on counsel was measured by defendants' attorney fees incurred after the request for voluntary dismissal was denied. This amounted to $9,297. Plaintiff's counsel complain that the sanction chosen was excessive and inappropriate. We review the sanctions chosen by the district court under an abuse of discretion standard. Cooter & Gell, 110 S.Ct. 2447.
 
 
 23
 The rule in this circuit is that in choosing a sanction, the guiding principle is that "the least severe sanction adequate to serve the purposes of Rule 11 should be imposed." In re Kunstler, 914 F.2d 505, 522 (4th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991).[2] The critical attack made by plaintiff's counsel is that the sanction imposed here was manifestly out of line with this "least severe sanction" rule.
 
 
 24
 In Kunstler we elaborated on the purposes of Rule 11:
 
 
 25
 [T]he primary, or "first" purpose of Rule 11 is to deter future litigation abuse. A district court can and should bear in mind that other purposes of the rule include compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management. But the amount of a monetary sanction should always reflect the primary purpose of deterrence.
 
 
 26
 914 F.2d at 522-23 (citation omitted). We added that a district court should explain the basis for a sanction, and that in choosing the sanction a court should consider the following factors: the reasonableness of the opposing party's attorney's fees, the minimum to deter, the ability to pay, and factors related to the severity of the Rule 11 violation. Id. at 523.
 
 
 27
 In reviewing the amount of the sanction chosen by the district court, it is obvious that the sole determinant was opposing counsel's fee for services. As we said in Kunstler, "Rule 11 should not blindly be used to shift fees," id. at 522, and indeed that "a monetary sanction should never be based solely on the amount of attorney's fees claimed by the injured party...." Id. at 523. Instead, a court should base the amount of such a sanction on all the factors above noted and should be mindful that " 'reasonable' attorney's fees in the context of Rule 11 'does not necessarily mean actual expenses and attorney's fees.' " Id. (quoting Fahrenz v. Meadow Farm Partnership, 850 F.2d 207, 211 (4th Cir.1988)). Understandably, the district court was not in a position to follow Kuntsler's guidance on these matters, and should now be allowed to do so if, having decided upon reconsideration that any monetary sanction is warranted, assessment of its amount is required.
 
 IV
 
 28
 In conclusion, we remand for reconsideration of the decision to impose sanctions in light of our discussion in Part II. And we direct that if the district court should again determine that a sanction is in order, that it should choose the appropriate sanction in light of the dictate to choose the "least severe sanction" to do the job, and with an eye on the factors emphasized in Kunstler if a monetary sanction is imposed.
 
 
 29
 VACATED AND REMANDED.
 
 
 
 [1]
 We requested supplemental briefing on the question of whether the appeal was properly before us since the notice of appeal only designated plaintiff as filing the appeal, yet the district court expressly imposed sanctions only against counsel
 In Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court made plain that Fed.R.App.P. 3 requires a party to be named in a notice of appeal. Id. at 314, 108 S.Ct. at 2407. However, the Court added that "if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." Id. at 316-17, 108 S.Ct. at 2408-09.
 In this case, only one party, plaintiff's counsel, is entitled to bring the appeal, since they were the only party adversely affected by the court's ruling. Moreover, the only appealable judgment from the district court is the order imposing sanctions against counsel. Compare DeLuca v. Long Island Lighting Co., Inc., 862 F.2d 427 (2d Cir.1988) (appeal was taken from lower court decision denying recusal motion and imposing Rule 11 sanctions on counsel; since same party could not appeal both orders, and only client named in notice of appeal, reviewing court decided recusal issue but held jurisdictionally barred from considering appeal of sanctions).
 The circumstances here present no risk of ambiguity or confusion, which can be caused when an "et al." designation is used in a multi-party case, for example, see Torres, 487 U.S. 312, 108 S.Ct. 2405; see also, e.g., Cruz v. Melendez, 902 F.2d 232, 235-36 (3d Cir.1990). Consequently, we hold that counsel here met the test of "the functional equivalent of what the rule requires." Torres, 487 U.S. at 317, 108 S.Ct. at 2409. Accord Aetna Life Ins. Co. v. Alla Medical Servs., Inc., 855 F.2d 1470, 1473 (9th Cir.1988) (facing similar facts, the court found "no opportunity for confusion or prejudice.... Aetna and this court were aware of the issue on appeal and of the fact that [counsel] was the appellant."). But see Rogers v. National Union Fire Ins. Co., 864 F.2d 557, 559 (7th Cir.1988) (holding that Rule 3(c) is "inflexible" and dismissing appeal where party not named, even though no opportunity for confusion or prejudice).
 
 
 [2]
 Kunstler was decided after the district court imposed the sanction challenged on this appeal so was not available for the court's guidance at that time